IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| United States ex rel Salvador Lopez, | * | |
| Plaintiff, | * | Civil Action No. |
| v. | * | |
| M/V AQUAROSA, its engines, tackle and apparel, | * | |
| | * | **FALSE CLAIMS ACT CASE FILED UNDER SEAL** |
| Defendant *in rem*, and | * | **PURSUANT TO 31 U.S.C.§ 3729, *et seq.*** |
| Falcon Rederi A/S, | * | **IN ADMIRALTY WITH REQUEST FOR ISSUE OF** |
| Falcon Maritime AS, | * | **WARRANT OF ARREST AND WRIT OF MARITIME ATTACHMENT** |
| Aquarosa Shipping A/S, | * | |
| Efploia Shipping Co SA., | * | **DO NOT PLACE IN PRESS BOX DO NOT ENTER IN CM/ECF/PACER** |
| Defendants *in personam*, and | * | |
| The Master and/or Custodian of the M/V AQUAROSA, | * | |
| | * | |
| Garnishee. | * | |

* * * * * * * * * * * *

**VERIFIED COMPLAINT IN REM AND IN PERSONAM**

**Jury Trial Demanded Against *In Personam* Defendants**

Plaintiff-Relator Salvador Lopez *ex rel* the United States of America ("Plaintiff-Relator"), in the name of the United States of America and in his own name, pursuant to the False Claims Act, 31 U.S.C.§ 3729, *et seq.*, hereby sues the M/V AQUAROSA, Official Number12268, its engines, tackle and apparel (the "Vessel"), defendant *in rem*, requesting the issue of a warrant of

arrest of the Vessel pursuant to Supplemental Federal Admiralty and Maritime Rule C, sues defendant Aquarosa Shipping A/S, *quasi in rem* and *in personam*, requesting issue of a writ of maritime attachment pursuant to Supplemental Federal Admiralty and Maritime Rule B, and sues Falcon Rederi A/S, Falcon Maritime AS, and Efploia Shipping Co SA, *in personam*, all under 31 U.S.C. § 3730(h), as follows:.

## INTRODUCTION

Plaintiff-Relator brings this *qui tam* action in the name of the United States of America and in his own name against the above named defendants (hereinafter collectively referred to as "Defendants").

1. This is an action to recover damages and civil penalties arising from the following violations:

> Of 31 U.S.C. § 3729(a)(1)(A), by knowingly presenting or causing to be presented a false or fraudulent claim for approval;
>
> Of 31 U.S.C. § 3729(a)(1)(B), by knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim;
>
> Of 31 U.S.C. § 3729(a)(1)(C), by conspiring to commit a violation of subparagraphs (A), (B) and (G); and
>
> Of 31 U.S.C. § 3729(a)(1)(G) by knowingly making, using or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States Government, and knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the United States Government.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 because this action arises under the laws of the United States. This Court further

has jurisdiction under 28 U.S.C. § 1333. This is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h). Defendant Aquarosa Shipping A/S is not found in this District within the meaning of Supplemental Rule B. Plaintiff-Relator has provided the United States with disclosure under 31 U.S.C. § 3730 *et seq*.

3. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a). The Vessel was at the time of the violations herein, and will be in this District.

4. Venue is proper in this District because the violations complained of arose in this judicial district.

**PARTIES**

5. Plaintiff-Relator Salvador Lopez is the "original source" of the information giving rise to this action. Plaintiff-Relator has independent knowledge of the conduct discussed herein and approached the United States, through the United States Coast Guard, upon the Vessel's February 20, 2011 arrival at the anchorage near Sparrows Point, Maryland.

6. At all times relevant to this Claim, Plaintiff-Relator was Third Engineer aboard the Vessel. Plaintiff-Relator joined the Vessel on or about December 12, 2010 in Indonesia. The Third Engineer's duties aboard the Vessel were to monitor and work with the operation of the engines and the Vessel's other machinery and equipment, in the Vessel's engine room. According to customary maritime practice, the Third Engineer reports to the Second Engineer, who reports to the First Engineer. The First Engineer On the Vessel, during the voyage in which the Plaintiff-Relator was aboard the Vessel, Plaintiff-Relator managed the Fourth Engineer, Oiler, Wiper, Electrician, and Fitter.

7. Plaintiff-Relator is a citizen of the Republic of the Philippines. The identities and

nationalities of the officers and crew aboard the Vessel, from the time that Plaintiff-Relator joined the Vessel to the time of the Vessel's February 20, 2011 arrival and first anchorage in the United States, include the following:

**Greece Citizens**

Christos Gkiomas, Captain
Andreas Konstantindis, Chief Engineer
Nikolaos Xenis, Second Engineer

**Phillipines Citizens**

Salvador Lopez, Third Engineer
Nonato Villazana, Oiler
Chrisopher Delos Reyes, Wiper
Tommy Retotar, Fourth Engineer
Edgardo Grecia, Electrician
Antonio Tesaluna, Fitter

The First Engineer took his orders from the Master of the Vessel (who in turn took his orders from the Vessel's Owners), and also, Plaintiff-Relator believes, directly from the Vessel's Owners.

8. Efploia Shipping Co., 111 Flonos Street, Gr. - 18535 Piraeus, Greece, a Marshall Islands corporation, was at all times of the false claims discussed herein, the Operator and Technical Manager of the Vessel and direct employer of the Vessel's officers and crew as set out above. Efploia Shipping Co. was at all times responsible for direction of the Captain and Chief Engineer.

9. Falcon Maritime Group, 1, Orient Plads, DK-2100 Copenhagen, Denmark (http://www.falcon-maritime.com/Falcon_Maritime/Maritime.html) includes Falcon Maritime A/S. Falcon Maritime, A/S was at all times pertinent to the information herein, the Manager of

the Vessel. The Vessel's Group owner is Falcon Rederei A/S, also part of the Falcon Maritime Group, which in turn controls the Vessel's registered owner, a Danish corporation called Aquarosa Shipping, A/S. Falcon Maritime hired Efploia Shipping as its agent, to further manage and operate the Vessel, including to direct the crew.[1] Herein, Aquarosa Shipping A/S, Falcon Rederi A/S, Falcon Maritime AS, and Efploia Shipping Co SA are referred to as "Owners."

**The Facts Giving Rise to False Claims Act Violations**

10. Soon after boarding the Vessel in Indonesia, Plaintiff-Relator noticed a "magic pipe" installed aboard the Vessel. This aparatus was a means to discharge oily and other bilge water from the Vessel without passing that oily and other water through the Vessel's separator system.

11. The "magic pipe" aboard the vessel from at least December, 2010 to the time of the Vessel's arrival in the United States in February, 2011, consisted of a bypass hose from pipes leading to waste tanks to the overboard discharge valve of the boiler blow-down line. The Second Engineer, Nikolaos Xenis, and other crew, were ordered by the Chief Engineer, and sometimes the Second Engineer, to make discharges from the Vessel's Bilge Holding Tank, Waste Oil Tank, and sludge tanks directly overboard to the sea through the bypass hose. This dumping of bilge waste and oily sludge occurred intentionally to make discharges of oil contaminated waste without proper treatment through the Oily Water Separator or use of the ship's incinerator. The Chief Engineer in connection with this operation, made false entries of tank volumes in the Vessel's Oil Record Book and false entries in the Vessel's sounding logs,

---

[1] At the time of the incident, and from the time of Plaintiff-Relator's joining the Vessel, the Vessel was time chartered by Carbofer Group, S.A. ( http://krcholding.com/pagine/Carbofer_Group.html ), a steel, coal and related products trader.

purporting to show that the discharges had not been made. When the Vessel approached port, the Chief Engineer ordered crew members to draw sea water into the waste tanks so that the amounts of liquid in the tanks would approximate tank volumes falsely recorded.

12. The fluid generally found in a Bilge Holding Tank is a mixture of water, lubricating oils, heavy fuel oil residues, and potentially other chemicals. The waste oil tank and sludge tanks contain heavy oil residues and sediments derived from the fuel purification process and other processes on the ship. From the time that the Plaintiff-Relator joined the Vessel in December, 2010, the Vessel sailed from Indonesia to the Netherlands, and then on to the United States. Plaintiff-Relator saw no change in the “magic pipe” system of the Vessel during that time and therefore believes that it was regularly operated during the voyage, intentionally placing tons of waste into the oceans between Indonesia and Netherlands, and Netherlands to the United States.

13. In addition, the Vessel did not use while at sea, its incinerator for garbage disposal. Instead, at the order of the Captain and/or Chief Engineer, garbage was simply dumped overboard. Plaintiff-Relator believes that the Captain and/or Chief Engineer or crew at their direction, also falsified records relating to the incinerator showing that it was used for garbage disposal, when it was not.

14. Upon the Vessel’s arrival at the Sparrows Point anchorage on or about February 20, 2011, United States Coast Guard (“USCG”) personnel boarded the Vessel for inspection. Plaintiff-Relator approached the personnel, indicating that he wanted to speak with them. Prior to the Vessel’s arrival, he had used his cell phone to take photographs of the “magic pipe” system. Plaintiff-Relator gave the photos (and phone) to the USCG personnel.

15. After the USCG personnel departed the Vessel, after their first inspection, the Chief Engineer or Second Engineer, instructed the Oiler or other crew personnel to clean the sludge and other residue from the "magic pipe" discharge hose. The purpose of the orders to clean the residue, was to make it appear that while the "magic pipe" system was aboard the Vessel, the Vessel had not used it and therefore there had been no violation. This action was intentionally designed to deceive USCG personnel, who the Chief Engineer and Captain knew would be returning to the Vessel.

16. The Captain of the Port detained the Vessel, and USCG personnel returned the next day to inspect the Vessel in more detail, including the "magic pipe" system and the Vessel's logs. There, they found the falsified logs, which, if truthfully maintained, would have disclosed the Vessel's violation of United States law and those violations subjecting the Owners to fines and penalties.. Plaintiff-Relator also believes, because of the discharges which the Vessel had made and which, if factually reported, would have confirmed the discharges, that sometime proximate to the Vessel's arrival, the Vessel by its officers submitted to the United States a false Ballast Water Reporting Form, also required by 33 C.F.R. Part 151. Submitting this false Form also was Owners' attempt to evade the fines and penalties, which a truthfully-completed form would support.

17. The USCG detained the Vessel for three (3) days for inspection. The Inspectors cited the Vessel and its Owners for three material defects, namely, failure to maintain an accurate oil record book, failure to correctly report the use (or non-use) of oily-water separating equipment, and various violations of safety and environmental policy. All of these citations resulted directly from the material information which Plaintiff-Relator provided as an original

source to the United States.

18. After this inspection, the Captain of the Port permitted the Vessel to continue its voyage, to Wilmington, Delaware, where on or about February 25, 2011 Plaintiff-Relator, and the officers and crew listed above, were removed from the Vessel. After immigration processing, the United States had Plaintiff-Relator transported to Baltimore, where the United States interviewed him extensively about the Owners' violations and false statements.

**False Claims Act Violations**

19. Owners, through their agents the Chief Engineer, Captain and other members of the crew, violated the False Claims Act as set out above, specifically:

> Of 31 U.S.C. § 3729(a)(1)(A), by knowingly presenting or causing to be presented a false or fraudulent claim for approval;
>
> 31 U.S.C. § 3729(a)(1)(B), by knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim;
>
> 31 U.S.C. § 3729(a)(1)(C), by conspiring to commit a violation of subparagraphs (A), (B) and (G);
>
> 31 U.S.C. § 3729(a)(1)(G) by knowingly making, using or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, and knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.

Had the Vessel and Owners properly reported their garbage and bilge discharges, they would have had to pay significant fines and penalties. The Owners further attempted to fraudulently avoid payment to the United States, after the initial USCG inspection, by causing the "magic" pipe to be cleaned to appear that Owners and the Vessel had not used it.

20. The obligations which Owners attempted to knowingly and improperly avoid or decrease, by use of the false records maintained aboard the Vessel as set out above, and false

records (including the Ballast Water Reporting Form) submitted to the United States, include at least those for which fines and penalties are provided under the following statutes:

> 33 U.S.C. § 1908(a) and Title 33, Code of Federal Regulation, Section 151.25, Act to Prevent Pollution from Ships, specifically, by knowingly failing to maintain an accurate Oil Record Book in which all disposals of oil residue and discharges overboard of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces.
>
> 33 U.S.C. § 1907(d) § 1908(a), and Title 33, Code of Federal Regulation, Section 151.25, Act to Prevent Pollution from Ships, knowingly failing to maintain a Garbage Record Book in which all discharges of garbage, as defIned in Annex V of MARPOL 73178;
>
> 33 USCS § 1321, the Clean Water Act, "Oil and hazardous substances liability," in that Defendant Owners were owners, operators, and persons in charge of the Vessel, "(i) from which oil or a hazardous substance is discharged in violation of paragraph (3)," and (ii) who fail[ed] or refuse[d] to comply with any regulation issued under subsection (j) to which that owner, operator, or person in charge is subject,"and who further " ( C) [f]ail[ed] to comply with "regulation[s] issued under subsection (j);"
>
> 18 U.S.C. § 1505, Obstruction of an Agency Proceeding;
>
> 18 U.S.C. § 1519, Obstruction of Justice; and
>
> 18 U.S.C. § 1001, knowingly and willfully making and using false statements and writings within the jurisdiction of the USCG and Department of Homeland Security.

21.     Further, although the Vessel in September, 2010 obtained an International Oil Pollution Prevention Certificate, Plaintiff-Relator believes, because of the Vessel's and Owner's actions as set out above, including disconnecting the alarms for the Vessel's discharge system, that the Vessel in fact at the time of arrival in the United States in February, 2011 and since at least December, 2010, was out of compliance with the Certificate.  A current and factually true Certificate was necessary for the Vessel's entry into the United States.  It was on the basis of this false certificate that the Vessel was permitted to enter the United States.

22.     United States law also required the Vessel to maintain full insurance coverage

against marine pollution, and to present to the United States as a condition of entry a valid Certificate of Financial Responsibility ("COFR") confirming that such insurance was in force. Because of the "magic pipe" and the Vessel's and Owners' intentional pollution and discharge, and falsified records, however, Plaintiff-Relator believes that such insurance was or would not have been in force for the Vessel and any oil discharged from the Vessel. The Vessel thus also entered the U.S. on a false certification, that it had a valid COFR and underlying oil pollution insurance policy.

**COUNT ONE**
**(31 U.S.C. § 3729(a)(1)(A), by knowingly presenting or causing to be presented a false or fraudulent claim for approval)**

23. Plaintiff-Relator incorporates the foregoing paragraphs as if fully set forth herein.

24. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to officers, employees, or agents of the United States Government false or fraudulent claims for approval.

25. Defendants knew that these claims were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false. These claims were, therefore, false or fraudulent claims submitted for approval to the United States in violation of 31 U.S.C. § 3729(a) (1)(A).

26. Plaintiff, the United States, unaware of the foregoing circumstances and conduct of Defendants, and in reliance on the accuracy of said false or fraudulent claims, approved entry of the Vessel into the waters of the United States, which resulted in the United States being damaged in an amount to be established at trial or upon motion.

**COUNT TWO**
**(31 U.S.C. § 3729(a)(1)(B), by knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim)**

27. Plaintiff-Relator incorporates the foregoing paragraphs as if fully set forth herein.

28. By virtue of the acts described above, Defendants knowingly made, using or causing to be made or used, a false record or statement material to a false or fraudulent claim presented, or caused to be presented, to officers, employees, or agents of the United States Government..

29. Defendants knew that these claims were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false. These was the knowing, making or causing to be made or used, a false record or statement material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a) (1)(B).

30. Plaintiff, the United States, unaware of the foregoing circumstances and conduct of Defendants, and in reliance on the accuracy of said false or fraudulent claims, approved entry of the Vessel into the waters of the United States, which resulted in the United States being damaged in an amount to be established at trial or upon motion.

**COUNT THREE**
**(31 U.S.C. § 3729(a)(1)(B), by knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim)**

31. Plaintiff-Relator incorporates the foregoing paragraphs as if fully set forth herein.

32. By virtue of the acts described above, Defendants knowingly made, using or causing to be made or used, a false record or statement material to a false or fraudulent claim presented, or caused to be presented, to officers, employees, or agents of the United States

Government..

33. Defendants knew that these claims were false, fraudulent, or fictitious, or were deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false. These was the knowing, making or causing to be made or used, a false record or statement material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a) (1)(B).

34. Plaintiff, the United States, unaware of the foregoing circumstances and conduct of Defendants, and in reliance on the accuracy of said false or fraudulent claims, approved entry of the Vessel into the waters of the United States, which resulted in the United States being damaged in an amount to be established at trial or upon motion.

**COUNT FOUR**
**(31 U.S.C. § 3729(a)(1)(G), knowingly making, using or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States Government, and knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the United States Government).**

35. Plaintiff-Relator incorporates the foregoing paragraphs as if fully set forth herein.

36. Defendants knowingly made, used or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States Government, and knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States Government.

37. Plaintiff, the United States, unaware of the foregoing circumstances and conduct of Defendants, has been damaged in an amount to be established at trial or upon motion.

**COUNT FIVE**
**(31 U.S.C. § 3729(a) (3) False Claims Act)**
**(Knowingly Engaging In a Conspiracy In Violation of the False Claims Act)**

38. Plaintiff-Relator incorporates the foregoing paragraphs as if fully set forth herein.

39. Defendants conspired to violate 31 U.S.C. §§ 3729(a) (1)(A, B and G)

40. As a consequence of this illegal conspiracy, the United States has suffered substantial damages in an amount to be determined at trial or upon motion.

WHEREFORE, Plaintiff-Relator, on behalf of himself and the United States of America, demands judgment against Defendants as follows:

A. **Against the Owners (Aquarosa Shipping A/S, Falcon Rederi A/S, Falcon Maritime AS, and Efploia Shipping Co SA), in personam, Counts I through V**:

(1) Treble the amount of damages sustained by the United States, in an amount to be established at trial equal to the amount of false statements and records submitted by Defendants;

(2) Assessment of a civil penalty of $10,000 for each false or fraudulent statement and record that Defendants made or caused to be made to the government;

(3) All other necessary and proper relief, including the costs of this action.

B. **In Rem Against the Vessel**: That this Court issue a arrant of arrest of the Vessel, *in rem*, pursuant to Supplemental Rule C, and that once the Vessel is arrested it be condemned and sold to satisfy all amounts which this Court may award in response to Counts I through V herein, including all attorneys fees and costs as demanded herein, further ordering that all costs of arrest and of this action, including amounts *custodia legis* for the Vessel, be paid from the proceeds of the sale of the Vessel;

C. **Quasi In Rem Against defendant Aquarosa Shipping, A/S**: That since defendant Aquarosa Shipping, A/S cannot be found within this district pursuant to Rule B, this Court issue an order direction the Clerk of Court

to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all tangible or intangible property, or any other funds held by any garnishee, which are due and owing to defendant Aquarosa Shipping, A/S up to the amount demanded herein and that may be awarded in response to Counts I through V herein, to secure Plaintiff-Relator's and the United States' claim, including all attorneys fees and costs as demanded herein, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in this Verified Complaint;

In addition, Plaintiff-Relator on his behalf further demands:

(D) That, in the event that the United States of America, either directly or through Plaintiff-Relator proceeds with this action or otherwise settles these claims, the Court award to Plaintiff-Relator and against Defendants, an amount of the proceeds of this action or settlement of these claims of not less than 15% and as much as 25% pursuant to 31 U.S.C. § 3730(d), together with an amount of reasonable expenses incurred by Plaintiff-Relator, plus reasonable attorneys' fees and all costs and expenses incurred by the Plaintiff-Relators in bringing this action.

(E) That in the event that the United States of America does not proceed with this action, the Court award to Plaintiff-Relator, and against Defendants, an amount of the proceeds of this action or settlement of claims of not less than 25% and as much as 30% pursuant to 31 U.S.C. § 3730 together with an amount of reasonable expenses incurred by Plaintiff-Relator, plus reasonable attorneys' fees and all costs and expenses incurred by the Plaintiff-Relator in bringing this action.

(F) That this Court award other and further proper relief.

/

[Continued on Next Page]

/

**Jury Trial Demanded**

Plaintiff-Relator, on his own behalf and on behalf of the United States, demands a jury trial against the *in personam* defendants, on all claims, counterclaims, and defenses.

Dated: April 22, 2011.

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
John T. Ward (#1507)
Marios J. Monopolis (#29177)
Simms Showers LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone 410-783-5795
Facsimile 410-510-1789
jssimms@simmsshowers.com
jtward@simmsshowers.com
mjmonopolis@simmsshowers.com

**VERIFICATION**

J. Stephen Simms certifies under penalties of perjury as follows:

1. I am counsel to Plaintiff-Relator Salvador Lopez, over 18 years old and competent to make this certification.

2. The sources of the knowledge, information and belief contained in the Verified Complaint is Plaintiff-Relator. The Verified Complaint is true to the vest of that knowledge, information and belief. Plaintiff-Relator is not readily available to make this Verification, and I am authorized to so verify.

3. I made the following efforts on behalf of plaintiff to locate, in advance of service, defendant Aquarosa Shipping, A/S within this District:

(A) Searched the records of the Maryland State Department of Assessments and Taxation, finding no listing for Aquarosa Shipping,

(B) Searched for Aquarosa Shipping, A/S on the Google search engine, finding no referenced location or telephone number for Aquarosa Shipping, A/S in this District; and

( C) Searched for listings for Aquarosa Shipping, A/S in the telephone directories including this District, finding no listing for Aquarosa Shipping, A/S.

I certify pursuant to 28 U.S.C. § 1746 and under penalties of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief..

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
Simms Showers LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone 410-783-5795
Facsimile 410-510-1789
jssimms@simmsshowers.com

Executed on: April 22, 2011.